All right. Our third case for this morning is United States v. Law 19-2345. I think that's on the briefs. Oh, I'm sorry. That's on the briefs. Excuse me. We move, rushing right along then, to Flores v. City of South Bend. I think maybe now I have the right thing. We've got Mr. Phillips and Mr. Agostino. So, Mr. Phillips, we begin with you. Thank you, Your Honor. Good morning. My name is Steve Phillips, and I represent Sorida Flores, who is the sister of Erica Flores, deceased, and her two young daughters. As this court knows, the standard for a motion to dismiss, pursuant to Rule 12b, is a high bar to get the complaint dismissed. Next, Rule 8 requires a short and plain statement to the claim, showing that the pleader is entitled to relief. Notice pleading. According to the Supreme Court in Ashcroft v. Eckel, plaintiffs need not plead detailed factual allegations, but we did. As this court is well aware, all facts and inferences must be interpreted in a light most favorable to the non-movement. That's Mrs. Flores. Finally, as the Supreme Court in Twombly held, a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely. So, Mr. Phillips, let me zero in on this case. I take it that nobody thinks that Officer Gorney had to know Ms. Flores' name before he hit her car, so that we're not saying that he had to have specific intent to commit vehicular homicide on Ms. Flores. But what I'd like to know is your theory of what exactly sufficient nature of the danger and conscious disregard amount to here. Because I know in your brief you repeatedly say you're relying on the fact that you pleaded more facts than were present in the Hill case. And so is it that he was blasting along at 98 miles an hour, running red lights, and he guns it as he's going through an obstructed intersection? What is it that would allow a jury to find the requisite level of conscious disregard in this case? I think that a very telling opinion that will explain the facts as pled in our complaint is the Browder decision versus City of Albuquerque, Your Honor, which was written by Justice Gorsuch in 2015. And right at the beginning, and if we hear these facts compared to our facts, they're remarkably, remarkably similar. After finishing his shift at the Albuquerque Police, I'm sorry, let me restart. Adam Casius was going nowhere fast. We've looked at the case, I'm sure, but what then Judge Gorsuch finds is that conscious contempt of the lives of others in a form of reckless indifference is enough. Is that how you read that case? Absolutely. Okay, so the legal standard would be whether the facts that you pleaded plausibly would support that conclusion, I suppose. Yes, ma'am. And in our particular case, what we know is Officer Gorney was not called to the scene to assist. He did not call in and ask permission to assist. He decided on his own to go across town to an area where he was not assigned and to get involved in a traffic stop. It's all it was. It was a call about someone speeding. This was not a fleeing person. No one had even attempted to stop this man yet, and they had other squads there who were going to stop him. Officer Gorney. Mr. Phillips, I've got a procedural question for you. Yes, sir. When the defense here moves to dismiss and you respond to the motion to dismiss, that's when you include an attached proposed amended complaint. Is that correct? I don't think there was a proposed amended complaint attached in the trial court. How does that proposed amended complaint get into the record? Well, we tried to attach it to the appellate court record, and the court declined it. But the court gave an order that inferences and facts that could be consistent with the original complaint would be considered by this court. Correct me if I'm wrong, but I thought in the record there is a proposed, and maybe Mr. Agostino can speak to this during his turn. I thought in the record there was a proposed amended complaint at law as part of the record. There is, and it was filed in the appellate court, Your Honor. Okay, thank you. You may continue. Thank you, Your Honor. Officer Gorney was not assigned to this area. He drove two miles on his own, rarely using his lights, not using his siren. And he went through 19 intersections. 19 intersections, two miles on residential surface streets. And according to the Browder case, the facts in that case were that that man went 66 miles an hour on surface streets. Officer Gorney went over 32 miles an hour faster. And in that, he only went through 10 different intersections over a stretch of eight miles. Those were more rural, I wouldn't say rural, but those were less congested, less urban than the streets that Officer Gorney went through. The light was red, and he pressed on the gas, ignored the light, and then there was a crash. I think this case is very close to the Browder case factually. I think it's remarkably close. We haven't had a chance yet to talk to And then if you can just clarify exactly the state of mind that you think Officer Gorney had to have in order to support liability. I just want to know your position on this, your theory. Under Lewis, deliberate indifference, Your Honor. And I think that goes with Browder. I think that goes with the Wells case. I think that goes with Sowers. I think that's all very consistent. Deliberate indifference means knowledge of the risk and conscious disregard? That's defined broadly. Reckless disregard, words to that effect. Deliberate indifference, Your Honor, I think is the standard, or reckless disregard, I think that's used interchangeably in both Browder, Sowers, Servan, and Wells. I think that the only difference in some of these other cases is the speed. I look at the five cases that all describe this similar conduct where these officers are on their own particular mission, so to speak, and not responding to emergencies or fleeing felons. And the common theme is speed. In five of the cases we cited, there's only one case that had a greater speed than Officer Gorney did in this case. And three of the cases, the speeds that were held to be reckless or deliberately indifferent were only in the 60s. And these other police officers who were held to respond under 1983 were driving on interstate highways or roadways that were less congested than this case. And in some of these, they actually, some of these other five cases we cited, the officers actually had their headlights on. I'm sorry, their emergency lights, which Officer Gorney did not most of the time. He was going up to 98 miles an hour. And you say without consistent use of lights or sirens such that one could, one doesn't know actually whether the siren was on as he approached the fatal intersection or not, right? The forensic evidence, which we've not allowed to get into yet, is that he turned his lights on literally two seconds before he got to the intersection. And that's pretty strong evidence here of a reckless disregard or deliberate indifference. Didn't have the siren on either. So you say that's one of those facts that's consistent with your complaint, though not yet in the record, which on a 12B6 is fine. Yes, ma'am. And as I said, we have not had an opportunity to even depose or talk to Officer Gorney yet. So we're limited that they have knowledge that we don't. But we've got strong, factual, circumstantial evidence to make the case under 12B and under Rule 8 that we should be allowed to go on with this case. You know, as I read the briefs and everything over the weekend, it's one point yesterday I said I almost feel like I'm responding to a summary judgment motion at this point. We're not even there yet. But according to my time, my 10 minutes is up, Your Honor, but I welcome any questions that the justices might have for me. I see none, but you are welcome to save it for rebuttal. With the court's indulgence, I would like to save it. Certainly.  Mr. Agostino. Thank you and good morning and may it please the court. My name is Peter Agostino on behalf of the City of South Bend and Officer Gorney. And I want to start with what is and is not in the record addressing Judge Brennan's question earlier. The proposed amended complaint was at no time ever submitted to the trial court for consideration. Nor was any allegation made before the trial court of what a proposed amended complaint would contain. There was no effort done in that respect. Nor was there any separate motion filed at any time to try and seek to amend the complaint. And we have a situation here where a complaint was filed a year before the court's ruling. At any time, the plaintiff could have filed an amended complaint. Could have filed the amended complaint they tried to put in the record in the court of appeals. Could have tried to do that before the trial court. They did not. And I think not only is it unfair in the sense of sandbagging the trial court. It's just not following the rules. You have to follow the rules if you're going to try to get an amended complaint in. And so let's look at what is alleged in this case and whether it meets the pleading standards to get past the 12B6. I think we have to start with what was the exact holding in the Lewis case. Because I do think that's instructive. And the holding in that case was that in high-speed chases, with no intent to harm suspects physically or to worsen their legal plight, do not give rise to liability under the 14th Amendment, redressable by an action under Section 1983. That's the holding in the Lewis case. That's a pretty broad wording of the holding in the Lewis case. Because obviously the circumstances are quite different in that case from a routine traffic stop where you're not on duty, where you're driving over at unbelievable rates of speed to join other officers. So I point to that, Your Honor, because that is what the court says that they hold in that case. The Supreme Court says we hold. So that is the specific holding in that case. And it may be somewhat broad, but I think it's broad in the sense of understanding these different states of mind, so to speak, or different standards of how to establish what deliberate indifference is. And as the Lewis court points out, deliberate indifference, first of all, requires that there be some type of deliberation. So wait a minute. I am inferring from your brief and what you're saying now that you take from the County of Sacramento against Lewis that there's never liability unless the officer has deliberate animus against the suspect who is being pursued in this high-speed chase. But, of course, he's not pursuing anyone in this case. So you really do think he has to basically know, I'm going to kill Ms. Flores. Is that what his state of mind has to be? I don't think it has to be that he's going to kill her, but he has to be aware of some type of her presence, or not in a specific sense of identifying who that person is. But there has to be some knowledge to the officer that he's knowingly going to be causing some harm. So why isn't there that knowledge? Unless the City of South Bend really buttons up in the evening, there are going to be motorists on the road. And so he knows when he goes through an obstructed intersection, there could be a car there. That's the generic type risk that I think that the Hill case says is not enough. No, but the Hill case isn't talking about the conscious disregard if one is going at this speed, and if one isn't using lights or sirens, and if one can't see the intersection. Now, maybe if you're driving on some deserted Texas highway late at night, where you can see everything for 40 miles around you, maybe it's not reckless. Go ahead, drive 120 miles an hour. But in the middle of the City of South Bend, through a residential area, surely those facts which are alleged are pertinent. They may be pertinent to a certain degree, but I don't think they rise to the level of what type of recklessness is necessary in a case such as this. So you seriously don't think this alleges that Officer Gorney knew that there was a risk of collision and he consciously disregarded it by his method of driving? I think that if we focus on what's important in determining whether or not there's a constitutional violation, which deals with what was the purpose and motive of the act and actions of the actor in this case. Why is that? I was trying to do his state of mind, and so I take it you disagree with my statement that criminal recklessness requires proof that the defendant had knowledge of the risk and that he consciously disregarded it and the allegations in this case, which may or may not be proved, but the allegations describe that. You don't think that's the law? I don't think that that's precise enough. I think that we're dealing with a situation here where we have to look at, is there some evidence that there was some purpose or motive in Officer Gorney's actions which suggests that he was wanting to deprive someone of their constitutional rights? And that's not what we have here. Where do you get that from? Because criminal recklessness, even in Lewis, calls it deliberate indifference or reckless disregard. So reckless disregard doesn't mean I'm hoping to hurt somebody. Reckless disregard means you're reckless. You're just not concerned about it. I get that directly from the Lewis case where the court says... And when they apply that on page 854, they say that there has to be intent to harm. And there was no intent to harm here. Officer Gorney's actions, the motive behind his actions, were to get to help fellow officers in pursuit of a van. And these are the allegations that are in paragraph 55 of the complaint that was filed in the court below that he treated this, Officer Gorney treated this as an emergency situation in responding to it. Now, whether that was right or wrong, that's a matter of negligence, which does not rise to a level that gives a cause of action. I'm not worried about his original motive to join the other officers. I'm worried about his choice of, his deliberate choice of method to get there, which was to drive at 98 miles an hour through a residential area with utter disregard for the safety of the people who live there. He chose to do that. Nobody else was putting their foot on the accelerator. His choice to drive quickly to a scene to assist other officers, I think that that's where you get into this deliberate time span for deliberation, which I think you need for the indeliberate indifference. He has decided to get quickly to a scene to help other officers or in pursuit of a van. So, I guess, you know, when did the officer have to form the requisite intent to be liable under 1983? When he set out along the way, when he got to that traffic light, the cases in the other circuits are, well, perhaps a little ambiguous on that. And in our study of the case, that became something you were very interested in. Can you give us your view? I think that that's somewhat of a moving target, depending on the developing circumstances as you process through that. And if you look at the different types of cases, the Wells case from the Southern District of Indiana, where you have an officer who's drinking, consuming alcohol before and while he's driving, and also has his eyes off the road because he's on a computer, instant messaging, I think that that carries forward throughout his conduct. Whereas in this case, Officer Gorney, at the time that he is pursuing, okay, he's not aware of Ms. Flores. He's not aware of a person in or near an intersection. And the fact that there could be, I think, goes to question of whether or not he was negligent in his actions, but not to whether or not he was deliberately indifferent to her presence in that area. Why does it go to negligence instead of deliberate indifference if, as is alleged here, the view of the intersection is obstructed? I believe it's obstructed by a building, but whatever. It says it's obstructed. So why isn't it reckless to just drive out in the middle of an intersection running a red light, running lots of red lights, actually? It seems to me that's worse than negligent. Indeed, I wouldn't be surprised if South Bend chose to pursue such things criminally. Well, they haven't. No, but I'm just saying it's within the realm. It's not like, you know, parking next to a fire hydrant or something, which would give you a serious ticket, but nothing more. I think that the issue with your analysis on this, Your Honor, is that how do you give clear direction to officers on what conduct they can and cannot engage in and when is it and is not appropriate? But that actually, I mean, that bumps into your Monell claim in a way, which I think is briefed adequately. I don't particularly feel a need for discussion here about it, but if you really think that officers in South Bend think that it's okay to drive 98 miles an hour through a residential area to respond to a call where their response has not been asked for for a minor traffic violation, that would shock me. They don't know that that's not supposed to happen? Well, I don't know that you have the specific knowledge or allegation here that Gorney, he may have been driving 98, but he was not continuously driving 98 miles. He drove at different speeds at different times, as is alleged in the complaint. Okay. Okay. And having that specific awareness as he's going into that intersection, I don't know that that's well-plaid in this complaint. And I do think that there has to be some type of intent to harm, whether it's, and that's just fleshing out what does this deliberate indifference or recklessness mean. Exactly right. You know, so that's, it's all packaged, and you said a very important thing. There has to be intent to harm. Everybody understands that. But then the question is, what do you have to show? And is, as the Supreme Court put it in Lewis, reckless disregard, deliberate indifference enough? Or do you actually have to say, I intend to harm drivers out on the streets of South Bend? I think that it doesn't, you don't have to say I intend to harm her, but you can infer an intent to harm if you had some allegation here, for example, that said he saw her, he saw her about to enter the intersection, he saw people at the intersection, there was traffic in the intersection, something more than not knowing that she was anywhere near there, because that's what the facts in the case are, and that's what's been alleged. It's been alleged that he did not know she was there. So that something more, it is some type of knowledge of that some harm will happen. And then if he continues to take on a course of action, knowing that that harm is going to happen, you can infer there was an intent to harm, taking everything in favor of the plaintiff in that situation. That might get you past a summary judgment or a motion to dismiss. It may not get you past a summary judgment motion. But there has to be that allegation, and there isn't in this case. And so, and I think this also I want to point out, I think the running of 19 red lights, that's not in the record either. And I also want to point out that there was a record, so to speak, developed in advance of the filing of the complaint here during a disciplinary hearing relative to Officer Gorney, where the plaintiff's attorney was present at for part of. He attempted to actually file that record with the court. So this is not a case where the plaintiff did not know facts that the city does not know. They knew all the facts going into this. And I think that they knew they could not plead certain things because the facts, in fact, would not support that. And I think that's an important point to consider here in terms of what could have been alleged and what was available to be alleged. More could have been alleged to satisfy the pleading requirements to meet the standard to get past the motion to dismiss. And so we think the trial court got it right following Hill. It's consistent with Lewis and the trial court should be affirmed. Thank you. All right, thank you. Anything further, Mr. Phillips? Yes, ma'am. Thank you. If one were to accept the defense argument, we would have to plead that Officer Gorney knew and admitted that he was trying to run over this lady. That's what his argument boils down to. And that is not a pleading requirement, nor is it an evidentiary requirement under the Browder case, the Wells case, the Sauer case, et cetera. It's the reckless disregard. It's the deliberate indifference and reckless disregard. But I would like to remind us all the pleading requirement is to put them on notice. They have notice of what happened here. They have a fair opportunity to defend the claim. It's not intended to throw a plaintiff or the family of a plaintiff out of court based on a hyper technical interpretation of pleadings. This is simply a 12 v. 6 motion. And it's very important that when we talk about intent, the case laws legion that says case law can be interpreted. I'm sorry. Intent can be interpreted from facts and circumstances. We haven't had an opportunity to pose Officer Gorney. We haven't had an opportunity to depose the chief of police. It's interesting that they threw Mr. Gorney off the police force after this incident. That's an evidentiary point. It's not a pleading point, but it's an evidentiary point that we haven't had an opportunity to even explore. So we don't know if Officer Gorney saw her, if he saw her headlights coming across the intersection. It was dark. Certainly one can see headlights if they can't see a vehicle, which is information which would speak to his intent or his reckless disregard or indifference. We've got good forensic evidence that that the lights would be shining across the intersection, but we're not there yet. And the defense says that no one alleged he did not know she was there. That's not true. And we did not say he blew off 19 red lights. We said he went through 19 intersections. That's in the two miles. And the court can take judicial notice of where this was and where this chase started and where this chase ended. He went through 19 intersections from where he started to where he finished. And this was not a chase. I misspoke when I said that. He injected himself into this. This was not a high-speed chase. This is not governed under those higher standards. He had plenty of time to think about this. He had plenty of time to deliberate. And those are all facts that we would ask this court to give us the opportunity to explore to determine what was going on in his mind and consistent with the findings of Browder, Sowers, Servin, Wells, and Medina. And I might add that Medina specifically holds, Medina versus Denver, that you don't have to see and be aware of the particular person. It's a group of people who may be out on the roadways or out in the general area. And the same holds true in Browder and in Sowers. Those are all circumstances where bystanders not involved in the chase were injured by policemen or who was being chased. So I ask the court to keep in mind that when those five cases that we cited when they talked about the speed, every single case that we cited of the five cases, but one, Officer Gorney's speed was higher than all of those. Considerably higher. And some of those cases that involved lower speeds were on highways. And the one case that involved the higher speed, over 100 miles an hour, was on a highway, not on residential streets in downtown South Bend, Indiana. Does the court have any questions for me? Just one comment, Mr. Phillips and Mr. Agostino. I just want to assure you that I've re-familiarized myself with Docket Entry 28 and that order on the motion for reconsideration. So thank you for answering my questions. I apologize for any confusion that might have been engendered earlier. No problem, Your Honor. Thank you. All right, thanks to both counsel. The court will take this case under advisement.